# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BENSON TOWER CONDOMINIUM OWNERS ASSOCIATION**, an Oregon nonprofit corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>**VICTAULIC COMPANY**, a foreign corporation,<br><br>    Defendant. | Case No. 3:13-cv-01010-SI<br><br>**OPINION AND ORDER** |

Michelle K. McClure and Stuart K. Cohen, LANDYE BENNETT BLUMSTEIN, LLP, 3500 Wells Fargo Center, 1300 S.W. Fifth Avenue, Suite 3500, Portland, OR 97201; Jennifer L. Snodgrass and Richard N. Sieving, THE SIEVING LAW FIRM, P.C., 100 Howe Avenue, Suite 220N, Sacramento, CA 95825. Of Attorneys for Plaintiff.

Anne Cohen and Sharlei C. Hsu, SMITH FREED & EBERHARD, 111 S.W. Fifth Avenue, Suite 4300, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Benson Tower Condominium Owners Association ("Plaintiff" or

"Association"), brings this action against Defendant, Victaulic Company ("Defendant" or

"Victaulic"), as the manufacturer of allegedly defective plumbing products installed in the

Benson Tower Condominium. Plaintiff's First Amended Complaint ("FAC") (Dkt. 52) alleges

the following six claims: (1) strict products liability; (2) negligence; (3) breach of express warranty; (4) violation of Oregon's Unlawful Trade Practices Act ("UTPA"); (5) fraud; and (6) negligent misrepresentation. Before the Court is Defendant's motion to dismiss Plaintiff's fraud, negligent misrepresentation, and UTPA claims and also to strike Plaintiff's request for punitive damages under its fraud claim. (Dkt. 58.)

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Plaintiff is a condominium association organized under the Oregon Condominium Act, Or. Rev. Stat. § 100.005, *et seq.*, and is the governing body of the Benson Tower Condominium ("Benson Tower"). FAC ¶¶ 6-7. Benson Tower was completed in approximately 2008 and includes 143 separate living units. FAC ¶ 6. Each individual owner of a separate living unit in Benson Tower owns the interior of his or her respective unit, and each is a member of Plaintiff. FAC ¶ 8. All of the individual owners (collectively, the "Owners") own in common the general common elements of Benson Tower (the "General Common Elements"). FAC ¶ 7. The General Common Elements include, but are not limited to, the pipes, ducts, flues, conduits, wires, and other utility installations to their respective outlets in each individual living unit. FAC ¶ 7. Except for certain items not relevant here, Plaintiff is responsible for the maintenance, repair, and replacement of the General Common Elements in Benson Tower. FAC ¶ 7. Although Plaintiff arranges and pays for the cost of that work, Plaintiff then assesses and apportions those costs to the individual unit owners. FAC ¶ 7.

Defendant, Victaulic, is a New Jersey corporation that makes, markets, and supplies valves, pipe coupling, flanges, and gaskets for piping systems. FAC ¶ 9. Defendant distributes these components to suppliers and installers, including those doing business in Oregon. FAC ¶ 9. Certain products made by Defendant, including, but not limited to, butterfly valves, pipe coupling, flanges, and gaskets contain ethylene propylene diene monomer ("EPDM") rubber (the "Victaulic Products"). FAC ¶ 9.

The Victaulic Products were installed in the potable water piping system at Benson Tower. FAC ¶ 9. Plaintiff alleges that "[t]he potable water piping system installed throughout [Benson Tower] includes Victaulic Products that have prematurely deteriorated and failed or otherwise failed to properly perform." FAC ¶ 37. This deterioration "has resulted in damage to the Victaulic Products and in pipe-joint seal failings, which have caused property damage to components of [Benson Tower's] General Common Elements (other than the Victaulic Products themselves) to the potable water itself, and the interiors of the units." FAC ¶ 37.

Although not alleged by Plaintiff in its FAC, Defendant explains in its memorandum in support of its motion to dismiss (Dkt. 59) that Benson Tower was constructed by ITC Construction Group ("ITC" or the "General Contractor") as general contractor on behalf of the developer, Benson Tower, LLC (the "Developer"). Presumably, each individual owner purchased his or her respective unit either from the Developer or from a prior unit owner whose ownership interest ultimately traces back to the Developer. Defendant also explains that ITC, as the General Contractor, contracted with JRT Mechanical, Inc. ("JRT") to install the plumbing systems in Benson Tower. Defendant further explains that JRT purchased the Victaulic components, including the Victaulic Products alleged by Plaintiff, from F&S Distributors, Inc., a third-party distributor that purchased the Victaulic Products from Victaulic. As discussed more fully below, if Plaintiff agrees with these assertions by Defendant, they (or similar allegations) need to be expressly alleged, for at least some of Plaintiff's claims, including fraud.

Plaintiff alleges that "[s]ince the early 1990s, Victaulic was aware that its Victaulic Products were susceptible to failure when exposed to chloramines or other approved and recommended applications and that the failure of the Victaulic Products caused damage to the systems and buildings into which they were installed." FAC ¶ 78. Specifically, "[b]efore

construction of [Benson Tower], Victaulic knew that the Victaulic Products would fail when exposed to temperatures far less than 230° Fahrenheit, even though Victaulic represented and approved that the Victaulic Products were acceptable and recommended for use up to 230° F. Victaulic failed to disclose this fact to its consumers, including Plaintiff." FAC ¶ 79. Further, "Victaulic knew that the Victaulic Products would fail when exposed to chloramines, yet Victaulic recommended and approved the use of the Victaulic Products in systems where chloramines were used as a disinfecting agent. Victaulic failed to disclose this fact to its consumers, including Plaintiff." FAC ¶ 80.

Plaintiff also alleges that the Victaulic Products installed in Benson Tower's piping systems contain EPDM designated by Victaulic as "Grade E" and that Victaulic expressly represented that Grade E gaskets are recommended for both cold and hot potable water service up to 230° Fahrenheit. FAC ¶ 12. Plaintiff further alleges that beginning in the early 2000s, Victaulic became aware that the Grade E EPDM used in the Victaulic Products was defective and exhibited severe degradation, deterioration, and disintegration. FAC ¶¶ 19-20. By 2008, Victaulic was aware that its Grade E EPDM degraded when exposed to chloramines. FAC ¶ 21. In addition, before the construction of Benson Tower, Victaulic "knew of claims of black particles and sludge in potable water as a result of its defective Victaulic Products." FAC ¶ 26. In sum, Plaintiff alleges that, before Benson Tower was constructed, Victaulic was aware of significant defects in the Victaulic Products, misrepresented the qualities and capabilities of those products, and failed to disclose material information about those products and their defects necessary to make Victaulic's representations not misleading (*i.e.*, half-truths).

## DISCUSSION

### A.  Standing

Defendant argues that Plaintiff is not the real party in interest and does not have standing to pursue fraud, negligent misrepresentation, and UTPA claims on behalf of the individual unit owners. Defendant's argument is without merit. The Oregon Condominium Act, Or. Rev. Stat. § 100.005, *et seq.*, expressly gives a condominium association, such as Plaintiff, standing to bring suit in its own name or on behalf of its members. Section 100.405(4)(e) provides in pertinent part:

> (4) Subject to the provisions of the condominium's declaration and bylaws, and whether or not the association is unincorporated, the association may: . . .
>
> > (e) Subject to subsection (11) of this section, initiate or intervene in litigation or administrative proceedings in its own name, and without joining the individual unit owners, in the following: . . .
> >
> > > (D) Matters relating to or affecting common elements, including but not limited to actions for damage, destruction, impairment or loss of use of any common element;
> > >
> > > (E) Matters relating to or affecting the units or interests of the unit owners including but not limited to damages, destruction, impairment or loss of use of a unit or portion thereof, if:
> > >
> > > > (i) Resulting from a nuisance or a defect in or damage to a common element; or
> > > >
> > > > (ii) Required to facilitate repair to any common elements; and
> > >
> > > (F) Any other matter to which the association has standing under law or pursuant to the declaration bylaws or any articles of incorporation.

Or. Rev. Stat. § 100.405(4)(e). As defined in the statute, "common elements" include the hot and cold water systems. *See* Or. Rev. Stat. § 100.005(16); *see also Ass'n of Unit Owners of*

*Bridgeview Condos. v. Dunning*, 187 Or. App. 595, 612-13 (2003) (holding that when a complaint alleges defects involving common elements, a home owners association has standing to sue for damage to non-common elements as well). Thus, Plaintiff has statutory standing to sue and is the real party in interest.

### B.  Fraud

Defendant moves to dismiss Plaintiff's fraud claim, arguing that Plaintiff has not adequately plead reliance. Plaintiff responds, in the alternative, that either reliance is not required in a claim alleging a failure to disclose or reliance can be inferred.

#### 1.  Law governing fraud

A fraud claim is subject to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b).  Under Rule 9(b), a party alleging fraud must include "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotation marks omitted). The Ninth Circuit requires that in the context of pleading fraud, a "plaintiff must set forth more that the neutral facts necessary to identify the transaction." *Id.* A plaintiff must offer "an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).

Under Oregon law, a plaintiff must prove the following elements to prevail on a claim of fraud:  "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its

truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." *Or. Pub. Emps.' Ret. Bd. ex rel. Or. Pub. Emps.' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 424 (2004) (citation and quotation marks omitted).  A fraud claim can be based on either an affirmative misrepresentation or, in some circumstances, active concealment or nondisclosure. *See Ogan v. Ellison*, 297 Or. 25, 34 (1984); *Gregory v. Novak*, 121 Or. App. 651, 655 (1993). When fraud is based on silence or nondisclosure, a party must "demonstrate that the defendant either (1) remained silent when they had a duty to speak,[1] or (2) assumed the obligation to make a full and fair disclosure of the whole truth by making a representation in the nature of a 'half-truth.'" *Smith v. U.S. Bank, N.A.*, 2011 WL 7628515 at *6 (D. Or. Oct. 26, 2011) (footnote added), *report and recommendation adopted* 2012 WL 1029364 (D. Or. Mar. 26, 2012); *see also McFadden v. Dryvit Sys., Inc.*, 2004 WL 2278542 (D. Or. Oct. 8, 2004) (reasoning that "silence or concealment of facts can be the basis for a fraud action, especially when there are half-truths or misleading statements"); *Gregory*, 121 Or. App. at 655 (holding that "one who makes a representation that is misleading because it is in the nature of a 'half-truth' assumes the obligation to make a full and fair disclosure of the whole truth").[2]

---

[1] A duty to speak or disclose exists when there is a special relationship between a plaintiff and defendant. *Gardner v. First Escrow Corp.*, 72 Or. App. 715, 720 (1985). When a special relationship exists, "the defendant has a duty to disclose to the plaintiff all material matters of which the defendant had knowledge." Oregon Uniform Civil Jury Instruction No. 42.03; *see also Gebrayel v. Transamerica Title Ins. Co.*, 132 Or. App. 271, 281 (1995). A special relationship exists when the plaintiff has authorized the defendant to exercise independent judgment on the plaintiff's behalf and the defendant has accepted this responsibility. *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 160-62 (2001). A special relationship does not exist if the parties were merely in an "arm's-length" commercial or business relationship where they were acting in their own economic interest. *See Conway v. Pacific Univ.*, 324 Or. 231, 239-41 (1996); *see also Moore Excavating, Inc. v. Consol. Supply Co.*, 186 Or. App. 324, 333 (2003). Plaintiff has not alleged any special relationship relevant to this case.

[2] *See also* Oregon Uniform Civil Jury Instruction No. 42.04 ("When a defendant makes a representation to a plaintiff in the nature of a half-truth, the failure of a defendant to make a full

To establish reliance in a fraud cause, Oregon courts have held that "[d]irect evidence of reliance in support of a fraud claim is not required; a plaintiff may prevail on a showing that a reasonable inference of reliance can be drawn from the facts in evidence." *Wieber v. FedEx Ground Packaging Sys., Inc.*, 231 Or. App. 469, 483 (2009) (citing *Strawn v. Farmers Ins. Co.*, 228 Or. App. 454, 470 n.9 (2009)). Moreover, a representation need not be made directly to a plaintiff for the representation to be actionable. *Johnsen v. Mel-Ken Motors, Inc.*, 134 Or. App. 81, 90 (1995). In certain circumstances, reliance can be derivative—*i.e.*, made through another person on whom the injured party reasonably relied, who in turn reasonably relied on the false representation. *See Handy v. Beck*, 282 Or. 653, 659-65 (1978). It is, therefore, sufficient to show that the defendant "made a representation to [a third party] with the intention that it be communicated to and acted upon by the plaintiff." *Johnsen*, 134 Or. App. at 90.

In cases involving half-truths, the reliance element of a fraud claim is more complex. In *Hynix Semiconductor Inc. v. Rambus Inc.*, the Northern District of California addressed at summary judgment the issue of establishing reliance in the context of a half-truth under California's fraud law.[3] The court reasoned that "[o]rdinarily, one must prove that one read or heard a misrepresentation to have relied on it," but "[o]n the other hand, an omission is never conveyed, making it impossible for one to hear or read it." 2007 WL 4209399, at *7 (Nov. 26, 2007). The court further reasoned that "the half-truth calculated to deceive likely puts the one who hears it at ease," but that it "is the omitted portion of the half-truth that would have led a person to behave differently." *Id.* The court added that, given this dynamic, "to establish reliance

and fair disclosure of the truth may be a false representation."); *Krause v. Eugene Dodge, Inc.*, 265 Or. 486, 505 (1973) (same).

[3] For all issues relevant to the pending motion, California's law of fraud is substantially similar to Oregon's law.

in a case premised on 'half-truths,' a plaintiff must show that they heard the half-truth, but can be found to have relied on it if they would have behaved differently 'had the omitted information been disclosed.'" *Id.*

Although it appears that no Oregon court has expressly addressed the issue of the pleading requirement for reliance in the context of a fraud claim based on a half-truth, the reasoning in the *Hynix* case is consistent with Oregon fraud law. *Cf. Gregory*, 121 Or. App. at 655; *Heise v. Pilot Rock Lumber Co.*, 222 Or. 78, 89-90 (1960). Therefore, in order adequately to plead fraud based on a half-truth made by Victaulic, the Plaintiff must plead that a relevant person: (1) heard the half-truth; and (2) would have "behaved differently had the omitted information been disclosed." *See* 2007 WL 4209399, at *7.

### 2.  Victaulic's Alleged Fraudulent Misrepresentations and Half-Truths

Plaintiff alleges in its FAC that Victaulic made affirmative misrepresentations to Plaintiff in connection with Plaintiff's warranty claims in 2010. Plaintiff also appears to be attempting to allege that Victaulic made misleading statements (or half-truths) to JRT, that JRT reasonably relied upon these half-truths in or before 2008, that the General Contractor (ITC) reasonably relied upon JRT, that the Developer reasonably relied upon the General Contractor, and that Plaintiff either reasonably relied upon the Developer or stands in the shoes of the Developer as successor in interest. Both theories are addressed below.

#### a.  Affirmative Misrepresentations

When the Victaulic Products in Benson Tower failed in 2010, Plaintiff submitted warranty claims to Victaulic. Plaintiff alleges that "when consumers (including Plaintiff) submitted warranty claims or otherwise notified Victaulic of the defective condition of its products, Victaulic would falsely claim that the Victaulic Products were subjected to unknown adverse 'system conditions' outside of the recommended uses." FAC ¶ 83.  Plaintiff also alleges

that Victaulic knew that its products were defective and that Victaulic's misrepresentations and failure to disclose material facts "caused Plaintiff to purchase and replace the defective Victaulic Products with additional defective Victaulic Products, causing additional and progressive damages to the condominium." FAC ¶ 89. Thus, regarding Plaintiff's warranty claims made in 2010, Plaintiff has adequately pleaded reliance on affirmative misrepresentations.

### b.  Half-Truths and Derivative Reliance

Although the allegations contained in the FAC fall short, the facts asserted by the parties both in their memoranda and at oral argument appear to support, at least at the pleading stage, a second theory of fraud based on Victaulic's alleged half-truths. According to Plaintiff, Victaulic stated in its Seal Selection Guides, Field Installation Handbooks, Design and Installation Manual, and Product Catalogs that Victaulic recommended and approved the Grade E gaskets for potable water systems, specifically for use up to 230° Fahrenheit. It also appears that Plaintiff can allege that these statements were not true for municipal water systems, such as Portland's, that contain at least a certain percentage of chloramines, thereby making Victaulic's statements half-truths at best. Plaintiff also represented at oral argument that it will be able to plead and support allegations that JRT relied on Victaulic's half-truths, that the General Contractor relied on JRT, that the Developer relied on the General Contractor, that Plaintiff either relied on the Developer or, as successor in interest to the Developer, stands in the shoes of the Developer.

Plaintiff, however, has not alleged in its FAC these necessary elements of a derivative fraud claim based on half-truths. To survive a motion to dismiss, Plaintiff must allege, among other things, the following additional facts, if it can: (1) Victaulic made representations that were half-truths; (2) JRT saw or heard these half-truths and reasonably would have behaved differently had the omitted information been disclosed (*i.e.*, that the half-truths were material); (3) the General Contractor reasonably relied on JRT; (4) the Developer reasonably relied on the

General Contractor; (5) Plaintiff either reasonably relied on the Developer or, as successor in

interest, stands in the shoes of the Developer; and (6) Victaulic made these misrepresentations or

half-truths to a third party with the intention and expectation that they would be communicated

to and acted upon ultimately by persons in the position of Plaintiff. *See Handy,* 282 Or.

at 659-65; *Johnsen*, 134 Or. App. at 90; *see also Porte Liberte Homeowners Ass'n, Inc. v.

Sordoni Const. Co.*, 393 N.J. Super. 492, 503, 924 A.2d 592, 598 (N.J. Super. Ct. App. Div.

2007) (applying New Jersey law and concluding that "[t]he unique relationship between a

condominium association and a developer, created by statute, allows an association to step into

the developer's shoes when control is passed to the association"). Because Plaintiff's FAC fails

to allege these matters, it is insufficient, and Victaulic's motion to dismiss Plaintiff's fraud claim

concerning the 2008 alleged misrepresentations is granted with leave to replead.[4]

## C.  Negligent Misrepresentation

Defendant also moves to dismiss Plaintiff's negligent misrepresentation claim on the

grounds that Plaintiff has failed adequately to plead reliance on any alleged negligent

misrepresentation. For the reasons discussed above concerning Plaintiff's fraud section,

Plaintiff's claim of negligent misrepresentation is dismissed in part with leave to replead.

## D.  UTPA

Victaulic moves to dismiss Plaintiff's claim under the UTPA on several grounds.

Primarily, Victaulic asserts that the UTPA is a consumer protection statute that protects

consumers in consumer transactions and does not regulate commercial transactions among

businesses. Victaulic also argues that Plaintiff may not prosecute a derivative claim under the

UTPA on behalf of its members. In response, Plaintiff states that it is not asserting a derivative

---

[4] Because a portion of Plaintiff's fraud claim remains, the Court denies Victaulic's
motion to strike Plaintiff's request for punitive damages under that claim.

claim under the UTPA but is instead prosecuting a claim for damages sustained by Plaintiff as a result of Victaulic's violation of that statute. Plaintiff also argues that it is a "person" under the UTPA, citing Or. Rev. Stat. § 646.605(4) (defining a "person" as including a "legal entity"), and thus able to bring a claim under Or. Rev. Stat. § 646.638(1) (creating a cause of action in favor of a person who suffers an ascertainable loss as a result of another person's act or practice declared unlawful under Or. Rev. Stat. § 646.608). Notwithstanding the fact that Plaintiff is not asserting a derivative claim here, Plaintiff's claim is not cognizable under the UTPA.

In *Oregon Laborers-Employers Health & Welfare Trust Fund v. Phillip Morris Inc.*, U.S. District Judge Marsh wrote in 1998 that "Oregon's UTPA is a consumer protection statute." 17 F. Supp. 2d 1170, 1179 (1998). He concluded that "Plaintiffs have not alleged that they are consumers of defendants' products and thus, I find that they lack standing to maintain claims under the Oregon UTPA." *Id.* at 1180. Judge Marsh also distinguished *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto, Inc.*, 129 Or. App. 206 (1994), *aff'd in part, rev'd in part*, 325 Or. 46 (1997). As Judge Marsh explained:

> *Goodyear* involved an action by a franchisee against a franchisor and the issue was whether a corporation could ever maintain an action under the Act. The court held that the franchisee was a "person" under the Act and could maintain a claim. However, the franchisee was a consumer of the franchisor's products and services. Thus, my ruling is not based upon the fact that plaintiffs are entities rather than individuals, but is instead based upon the fact that plaintiffs have not alleged that they are in any manner "consumers" of defendants' products.

17 F. Supp. 2d at 1180 n.9.

Less than three years later, the same question came before the federal court in this district. U.S. Magistrate Judge Stewart extensively reviewed both the state cases and the legislative history underlying the UTPA. Expressly agreeing with Judge Marsh, Judge Stewart wrote that "this court has little difficulty in concluding that the UTPA provides a cause of action

PAGE 13 – OPINION AND ORDER

only for consumers." *CollegeNet, Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d 1167, 1174 (D. Or. 2001). Judge Stewart's Findings and Recommendation were adopted in their entirety by U.S. District Judge Jones. *Id.* at 1169. After noting that "[n]either the parties nor the court have been able to find any Oregon cases addressing whether the UTPA protects only consumers," Judge Stewart closely examined the statutory text and context of Or. Rev. Stat. § 646.638 and determined that the use of the word "person" in the statute is ambiguous because it "could reasonably be interpreted to include only those persons who have purchased or contracted for goods or services." *Id*. at 1172-73. Judge Stewart then examined the legislative history of the UTPA before reaching her conclusions. *Id.* at 1173-74.

Other judges in this district have reached the same result. In *L & A Designs v. Xtreme ATVs, Inc.*, 2012 WL 1532417 (D. Or. April 30, 2012), U.S. District Judge Hernandez addressed the defendants' argument that the plaintiffs lack standing to sue under the UTPA because they are not "consumers" of the defendants' products. He noted:

> In this District, several courts have also ruled that the UTPA is limited to consumer actions. *Oregon Laborers-Emp'r Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1180 (D. Or. 1998) ("Plaintiffs have not alleged that they are consumers of defendants' products and thus, I find that they lack standing to maintain claims under the Oregon UTPA."), *aff'd,* 185 F.3d 957 (9th Cir. 1999); *CollegeNet, Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d. 1167, 1175 (D. Or. 2001); *Volm v. Legacy Health Sys.*, 237 F. Supp. 2d 1166, 1175 (D. Or. 2002) (summary judgment granted because plaintiff was not a consumer of defendant's products); *Allegro Corp. v. Only New Age Music, Inc.*, No. 01-790-HU, 2002 U.S. Dist. LEXIS 27449, 2003 WL 23571745 (D. Or. 2003); *Lanphere Enters. v. Jiffy Lube Int'l*, No. 01-1168-BR, 2003 U.S. Dist. LEXIS 16205 (D. Or. July 9, 2003).

2012 WL 1532417 at *3-4. Judge Hernandez then concluded:

> I am not persuaded by Plaintiffs' arguments and see no reason to depart from the well-reasoned opinions of my colleagues. In particular, Magistrate Judge Stewart delved carefully into the

> legislative history of the UTPA and concluded that the UTPA is
> limited to consumer actions. *CollegeNet*, 230 F. Supp. 2d at 1174.

*Id.* at *4. More recently, U.S. Magistrate Judge Coffin considered this issue and reached the same result in his Findings and Recommendation. *Slep-Tone Entm't Corp. v. Shenanigans Lounge*, 2013 WL 1768444, at *4 (D. Or. Feb. 22, 2013) ("Plaintiff has not alleged that it is a consumer of defendants' products and thus, I find that plaintiff lacks standing to maintain claims under the UTPA."). On April 20, 2013, U.S. District Judge Aiken considered the plaintiff's objections to Judge Coffin's Findings and Recommendation concerning the UTPA claim and adopted those Findings and Recommendation. *Slep-Tone Entm't Corp. v. Shenanigans Lounge*, 2013 WL 1767727 (D. Or. Apr. 20, 2013).

In this case, Plaintiff does not allege that it is a "consumer" of the Victaulic Products. Instead, Plaintiff alleges that "when the Owners purchased their units, they purchased the Victaulic Products for personal, family and household purposes." FAC § 66. The deficiency in this allegation, however, is that Plaintiff does not allege that it purchased any Victaulic Products from Victaulic. Instead, the Owners purchased individual living units from either the Developer or from a prior owner whose purchase traces back to the Developer. Thus, neither Plaintiff nor any Owner is a "consumer" of the Victaulic Products under the UTPA as that statute has been consistently interpreted by the federal courts in this district. The Victaulic Products appear to have been sold, through a distributor, to professional plumbing companies, who installed the Victaulic Products in structures such as Benson Tower under commercial contracts with a general contractor, a developer, or even an association such as Plaintiff. These are not "consumer" transactions within the scope of the UTPA.

Plaintiff cites *Fowler v. Cooley*, which holds that the second part of the Oregon Supreme Court's two-part test to determine what constitutes a "personal, family or household purpose"

under the UTPA is that a good or service was, in fact, "purchased by the plaintiff for personal, family, or household use rather than commercial use or resale." 239 Or. App. 338, 344 (2010). From this proposition, Plaintiff argues that if it, or to be precise, an Owner who is a member of Plaintiff, purchased a living unit in Benson Tower for personal, family, or household use (as presumably many, if not all, did), then that Owner also must have purchased "the plumbing inside." That conclusion, however, does not follow. What Plaintiff, or to be precise, an individual unit owner who is a member of Plaintiff, purchased was a living unit (a condominium, or a home) that contained plumbing components, among many other things. That purchaser did not purchase the plumbing components – at least not under the UTPA as that statute has been interpreted by the federal courts in this district. In the absence of Oregon appellate authority to the contrary, this interpretation defeats Plaintiff's claim under the UTPA. Accordingly, Victaulic's motion to dismiss Plaintiff's claim under the UTPA is granted.

## CONCLUSION

Defendant Victaulic Company's motion to dismiss Plaintiff's claims for fraud, negligent misrepresentation, and violation of the UTPA and to strike punitive damages (Dkt. 58) is granted in part and denied in part. Plaintiff may replead within 14 days from the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 27th day of May, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge