IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BENSON TOWER CONDOMINIUM OWNERS ASSOCIATION**, an Oregon nonprofit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>**VICTAULIC COMPANY**, a foreign corporation,<br><br>    Defendant. | Case No. 3:13-cv-01010-SI<br><br>**ORDER ON PRETRIAL MOTIONS AND OTHER MATTERS** |

Michelle K. McClure and Stuart K. Cohen, LANDYE BENNETT BLUMSTEIN, LLP, 3500 Wells Fargo Center, 1300 S.W. Fifth Avenue, Suite 3500, Portland, OR 97201; Richard N. Sieving, THE SIEVING LAW FIRM, P.C., 100 Howe Avenue, Suite 220N, Sacramento, CA 95825. Of Attorneys for Plaintiff.

Anne Cohen and Sharlei C. Hsu, SMITH FREED & EBERHARD, 111 S.W. Fifth Avenue, Suite 4300, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

**I.    Plaintiff's Motion for Sanctions (Dkt. 233)**

Defendant's response shall be filed not later than 12 noon on Friday, January 2, 2015.

Plaintiff's reply, if any, shall be filed not later than 5:00 p.m. on Friday, January 2, 2015.

PAGE 1 – ORDER ON PRETRIAL MOTIONS AND OTHER MATTERS

## II.   Second Pretrial Conference

The Court will hold a second pretrial conference on Monday, January 5, 2015, at 9:30 a.m.

## III.   Time Limits on Witness Testimony at Trial

During the pretrial conference held on December 22, 2014, the Court asked the parties how much time each side would need for witness testimony. Each side agreed that 15 hours per side would be sufficient (Tr. 33). The Court finds that amount of time is reasonable and limits each side to a total of 15 hours of witness testimony, including all direct, cross, re-direct, and re-cross examinations. *See Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) ("Trial courts have broad authority to impose reasonable time limits. Such limits are useful to prevent undue delay, waste of time, or needless presentation of cumulative evidence. While trial courts have discretion to expedite the completion of trials, they must not adhere so rigidly to time limits as to sacrifice justice in the name of efficiency.") (internal quotation marks and citations omitted).

## IV.   Motion to Bifurcate Trial and Request for Reconsideration (Dkts. 142, 174, 204, 222, and 231)

Denied. *See* Dkt. 212.

## V.   Renewed Motion for Summary Judgment (Dkt. 223)

Denied.

## VI.   Plaintiff's and Defendant's Trial Exhibits (Dkts. 130, 144, 171, 182, and 203)

All rulings are reserved until trial.

Plaintiff's list of trial exhibits (Dkt. 130) identifies 180 trial exhibits. Defendant's list of trial exhibits identifies 432 trial exhibits, including one exhibit (marked as "Def. Ex. 428") that is a DVD labeled "Leland Manufacturing testing documents," which contains more than 40,000 pages. The Court is skeptical that the parties truly intend to use at trial this quantity of exhibits

and therefore will not pre-admit any of these exhibits at this time. Instead, the parties are encouraged to consult with each other before trial to determine which exhibits may be offered without objection. For any trial exhibit to which an objection is made, the court will consider that objection and any responses, as well as any foundational testimony, during the examination of the witness being questioned about that proffered exhibit at the time the exhibit is offered. Moreover, all time consumed during the offering of an exhibit will be counted as part of the 15-hour total time limit per side of the party seeking to offer that exhibit. Finally, if any party desires to use a trial exhibit during opening statement, that party may submit not later than January 2, 2015, up to ten trial exhibits for pre-admission. The Court will consider these at the next pretrial conference, which is scheduled for January 5, 2015.

## VII. Plaintiff's Motions in Limine (Dkts. 119, 136, 191, and 218)

### 1. Denied

Plaintiff moves for an order prohibiting Defendant from offering, inquiring about, or making reference to "any evidence suggesting or tending to suggest that Defendant's "residential plumbing valves and joining devices" are not defective. Citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979), Plaintiff argues that it is entitled to this order because, "[t]here are no material differences between the issues in the *Edge Lofts* litigation and the present action." Plaintiff is incorrect. *Edge Lofts* included two defendants (F&S Distributors and Seal Dynamics) not present in this action. Further, the buildings involved in the two lawsuits were designed and built by different architects, contractors, and plumbers. Moreover, the *Edge Lofts* matter involved some plumbing products that are not present in this action. These differences are material and preclude the order requested by Plaintiff.

### 2. Granted in Part

Plaintiff moves to exclude seven of Defendant's FRCP 30(b)(6) witnesses from testifying on Defendant's behalf because Defendant has refused to make those witnesses available for Plaintiff's case-in-chief. The witnesses who Plaintiff requests be excluded are: Greg Bannec, John Pierce, George Fencik, Michael Pigott, Vance Henry, Jim Renner, and Brian Linder. Plaintiff's Motion is granted to the extent that Defendant will not be permitted to elicit live testimony from these witnesses if they are not made available for live testimony during Plaintiff's case-in-chief. In the interest of fairness, judicial economy, and witness convenience, however, if any of these witnesses are called in Plaintiff's case-in-chief, Defendant's cross-examination will not be limited to the scope of Plaintiff's direct examination and may include non-leading questions on any topic fairly disclosed in Defendant's witness statement for that witness.

### 3. Ruling Reserved

Plaintiff moves the Court for an order prohibiting Defendant from offering, inquiring about, or making reference to, either in argument or testimony, any evidence relating to ASTM 6284 testing conducted by or at Kent Engineering that occurred in late 2013 and early 2014 (the "Kent ASTM Testing"). Plaintiff argues that this evidence is irrelevant because this testing did not involve any Victaulic components or EPDM formulas at issue in the present action. Defendant contends that this evidence may be relevant for impeachment purposes because two of Plaintiff's experts, Leyden and Fuller, may have used this evidence to produce their reports. The Court will consider any specific objection on this issue at trial.

### 4. Granted in Part and Denied in Part

Plaintiff asserts that if Victaulic, having now disclosed its own employees as non-retained experts, elicits expert testimony at trial, Victaulic will have waived any attorney-client privilege as to these witnesses. The Federal Rules of Civil Procedure protect against discovery certain communications between a party's attorney and that party's expert witness who is required to provide a report under Fed. R. Civ. P. 26(a)(2)(B). *See* Fed. R. Civ. P. 26(b)(4)(B) and (C). This rule, however, does not protect communications: (i) relating to "compensation for the expert's study or testimony," (ii) that "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed," or (iii) that "identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C). The Court hereby rules that any similar communications between a party's attorney and that party's own employee who testifies as a non-retained expert witness is similarly not protected against disclosure under the attorney-client privilege. Further, to the extent that any witness discloses otherwise privileged communications during trial testimony, that disclosure will be deemed to be a waiver as to all privileged communications regarding the same subject matter. In all other respects, Plaintiff's Fourth Motion in Limine is denied.

## VIII. Plaintiff's *Daubert* Motions

### 1. Daniel W. Rapp (Dkts. 195 and 216)

Granted in part and denied in part.

Mr. Rapp may provide lay testimony in which he states his observations. He may not, however, provide any opinion testimony concerning his observations (or about any other matter

PAGE 5 – ORDER ON PRETRIAL MOTIONS AND OTHER MATTERS

described in his witness statement) until after an appropriate foundation has been laid at trial consistent with Fed. R. Evid. 702.

### 2. Edward Saltzberg (Dkts. 197 and 216)

Denied. Plaintiff's objections to go weight, not admissibility.

### 3. Peter Elliott, Ph.D. (Dkts. 193 and 216)

Denied. Plaintiff's objections to go weight, not admissibility.

## IX. Defendant's Motions in Limine (Dkts. 143 and 183)

### 1. Granted in Part and Denied in Part

Defendant moves to exclude evidence of warranty claims received by Victaulic for the same components installed in other buildings as were installed at Benson Tower. Defendant argues that there is no evidence that any of the warranty claims come from jurisdictions that use chloramine to disinfect their water. Defendant also objects on the grounds that none of the warranty claims involve plumbing systems that are substantially similar to that of the Benson Tower.

In order to introduce evidence any warranty claim, Plaintiff must first establish that:

   a. the warranty claim was made before February 28, 2007, the date by which all Victaulic Products at issue (other than replacement products) installed in the Benson Tower were purchased; and

   b. the warranty claim was made in a geographic area that uses chloramine to disinfect its potable water supply.

The probative value of any warranty claims lacking this foundation is substantially outweighed by it potential for confusion or undue delay or its potential to mislead the jury. Fed. R. Evid. 403. The Court will consider any additional specific objections at trial.

PAGE 6 – ORDER ON PRETRIAL MOTIONS AND OTHER MATTERS

### 2. **Granted in Part and Denied in Part**

Defendant moves the Court to exclude all evidence related to the performance of Victaulic components at the Elizabeth Lofts Condominiums, Avenue Lofts Condominiums, Edge Lofts Condominiums, or any other building whose owner's association is represented by Plaintiff's law firm.

In order to introduce evidence related to the performance of Victaulic components at the Elizabeth Lofts Condominiums, Avenue Lofts Condominiums, Edge Lofts Condominiums, or any other building whose owner's association is represented by Plaintiff's law firm, Plaintiff must first establish that:

> a. the performance issues were known by Victaulic before February 28, 2007, the date by which all Victaulic Products at issue (other than replacement products) installed in the Benson Tower were purchased; and
>
> b. the performance issues arose in a geographic area that uses chloramine to disinfect its potable water supply.

The probative value of any evidence of product performance at any building other than Benson Tower lacking this foundation is substantially outweighed by its potential for confusion or undue delay or its potential to mislead the jury. Fed. R. Evid. 403. The Court will consider any additional specific objections at trial.

### 3. **Granted in Part and Denied in Part**

Defendant moves the Court for an order to exclude any testimony and argument related to health concerns due to "black particles" found in the plumbing system at the Condominiums.

Plaintiff's lay witnesses may not speculate as to the potential health effects of the black particles. Plaintiff may, however, offer appropriate expert testimony. In addition, Plaintiff's lay

witnesses may testify about their observation of the "black particles" and the extent to which those particles motivated a business decision by Plaintiff to replace the Victaulic Products at issue. Fed. R. Evid. 403 does not support any further exclusion of relevant evidence. The Court will consider any additional specific objections at trial.

### 4. Denied

Defendant moves to exclude Plaintiff from arguing that there is an industry standard that applies to Victaulic components other than the ANSI/NSF 61 standard. Defendant also argues that the ATSM D6482 test protocol does not establish an "industry standard." Plaintiff responds that the ATSM D6482 test protocol is a "testing standard" that has been used for over 30 years, and notes that both parties intend to present evidence on this standard. The Court will consider any additional specific objections at trial.

### 5. Grant in Part and Denied in Part

Defendant moves to exclude as irrelevant and unduly prejudicial all evidence of EPDM manufactured by other manufactures that are marketed as "Chloramine resistant." Defendant argues that Plaintiff should not be allowed to offer evidence related to that EPDM without first establishing that it would be compatible with the Victaulic components. Any evidence of such marketing by other manufacturers before February 28, 2007, the date by which all Victaulic Products at issue (other than replacement products) installed in the Benson Tower were purchased, will not be excluded under this motion in limine, but the Court will consider any further specific objections at trial. In addition, any evidence of such marketing occurring after March 1, 2007, will be presumptively excluded, although Plaintiff may attempt at trial to shown why the probative value of such evidence is not substantially outweighed by its potential for confusion or undue delay or its potential to mislead the jury. Fed. R. Evid. 403.

### 6. Not Applicable

Defendant did not file any Motion in Limine No. 6.

### 7. Withdrawn by Defendant

Defendant moves the Court for an order prohibiting Plaintiff from arguing that it made a warranty claim or that Plaintiff's notice under ORS 701.565 sent to Victaulic and its counsel amounts to a warranty claim. Plaintiff has no warranty claim remaining in this lawsuit. In addition, Defendant has withdrawn its defenses under ORS 701.565 and the applicable statute of limitation. Further, Defendant has withdrawn its motion in limine no. 7.

### 8. Not Applicable

Defendant did not file any Motion in Limine No. 8.

### 9. Granted

Victaulic moves the Court for an Order excluding any testimony about or reference by Plaintiff to any theory other than Plaintiff's surviving negligence and products liability claims. This motion is granted, however, Plaintiff may present evidence in support of its request for punitive damages relating to its products liability claim.

### 10. Denied

Defendant moves to exclude any testimony, reference, or argument related to evidence that has not already been produced. Defendant specifically requests that the following evidence be excluded: micrographs referred to in Dr. Fuller's report and testimony; Mr. Bekooy and Mr. Leyden's files relating to the Elizabeth Lofts Condominiums; documents or testimony related to loss of use damages; and documents related to the re-piping project at the Condominiums outside of what was produced. Plaintiff responds that the above-described items all relate to the *Edge Lofts* litigation, and either do not exist, have already been produced, or were never

requested by Defendant. The Court agrees that this motion in limine appears to have been copied by Defendant from the *Edge Lofts* litigation and has no application to this matter.

### 11.     Granted, Without Objection

Victaulic moves the Court for an Order excluding any testimony or reference before the jury about the existence of liability insurance. Victaulic further moves the Court to order all counsel to instruct their respective witnesses not to mention or discuss insurance.

### 12.     Granted, Without Objection

Victaulic moves the Court for an Order excluding any witness or attorney from asking the jury, any party or witness to "put themselves in Plaintiff's position" or other similar statements. Victaulic moves the Court to order all counsel to instruct their respective witnesses not to make such "Golden Rule" statements.

### 13.     Granted, Without Objection

Defendant moves to exclude any testimony or reference to settlement negotiations or the pre-trial mediation process. Defendant further requests that the Court order all counsel to instruct their respective witnesses not to mention or discuss settlement negotiations or the pre-trial mediation process. Finally, Victaulic moves the Court for an Order to exclude all testimony with any references to conversations, correspondence, or contact with party representatives during the pre-trial mediation process.

### 14.     Denied

Defendant moves to prohibit Plaintiff from offering evidence or testimony that any estimate of the cost of repair must include either a "contingency" or "allowance" for undiscovered damages or deficiencies. Defendant argues that such damages would be speculative. Plaintiff responds that such allowances are standard industry practice and are not,

PAGE 10 – ORDER ON PRETRIAL MOTIONS AND OTHER MATTERS

therefore, speculative. Plaintiff offers proposed Trial Exhibit 64, which includes multiple repair proposals with 25 percent contingency allowance added to the base amount of the proposal. Plaintiff may present evidence that estimates of the cost of repair typically include contingency amounts, provided that Plaintiff first establishes that such contingency allowance are standard industry practice.

**15.    Denied**

Defendant seeks an order requiring Plaintiff to segregate all litigation costs from damages sought by the jury. Plaintiff's Itemized List of Special Damages (Dkt. 116) does not contain any request for attorney's fees, expert fees, or litigation costs and expenses. Moreover, Plaintiff represents that its request for $32,738.45 in "investigative costs" predate the filing of Plaintiff's Complaint in this action.

**16.    Denied**

Defendant moves to exclude rebuttal evidence, testimony, and argument, except for that made necessary by Plaintiff's case-in-chief. Defendant, however, refers to no specific evidence or testimony. Accordingly, this motion is premature.

**17.    Denied**

Defendant moves to exclude all individuals and entities disclosed for the first time on the date of the discovery deadline. Defendant specifically requests that Shawn Ray of CASE Forensics, employees of Kent Engineering, employees of Horizon, employees of Har-Bro West, Inc., and Baron Adams of Portland Mechanical be excluded. Plaintiff correctly notes that fact discovery in this matter closed on August 15, 2014, not March 19, 2014 as stated by Defendant. Because all of the above-described witnesses were listed before August 15, 2014, or are not listed as a trial witness for Plaintiff, Defendant's motion is denied. The Court notes that this

motion in limine appears to have been copied by Defendant from the *Edge Lofts* litigation and has no application to this matter.

## X. Defendant's *Daubert* Motions (Dkts. 199 and 214)

### 1. Dr. Gerald Fuller

Denied. Defendant's objections to go weight, not admissibility.

### 2. Jerry Leyden

Denied. Defendant's objections to go weight, not admissibility.

### 3. Roger Bekoy

Denied. Defendant's objections to go weight, not admissibility.

## XI. Plaintiff's and Defendant's Objections to Lay Witness Statements

All objections to the parties' lay witness statements are reserved until trial.

## XII. Deposition Designations

The parties have agreed that a pre-trial ruling on objections to deposition testimony designations are not necessary because a majority of the witnesses are anticipated to be available at trial.

## CONCLUSION

The Court rules on the parties' various pre-trial motions and other matters as set forth in this Order.

**IT IS SO ORDERED**.

DATED this 29th day of December, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge